**Donald W. COLGAN and Dorothy I. Colgan, Plaintiffs–Appellants,**

v.

**WASHINGTON REALTY COMPANY, A Corporation, and William Captain and Eileen Captain, Defendants–Respondents.**

**No. 64455.**

Missouri Court of Appeals, Eastern District, Division Three.

May 31, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 30, 1994.

Application to Transfer Denied Aug. 15, 1994.

Steven J. Hughes, Matthew T. Willaert, Rabbitt, Pitzer & Snodgrass, P.C., St. Louis, for plaintiffs-appellants.

I.I. Lamke, Kimme & Lamke, Washington, for defendant-respondent Washington Realty.

Daniel J. Briegel, Briegel, Baylard, P.C., Union, for defendants-respondents Captains.

PUDLOWSKI, Judge.

This case arises from the trial court's grants of William and Eileen Captain's and the Washington Realty Company's motions for summary judgment on Donald and Dorothy Colgan's petition alleging intentional and negligent misrepresentation in the sale of real property.

William and Eileen Captain (sellers) owned a residence and retained Washington Realty Company (agent) as their realty agent. Donald and Dorthy Colgan (buyers), represented by Prudential Relocation Management, were interested in purchasing sellers' residence. Buyers spoke to sellers in January 1990 at which time sellers informed them that the only water leakage problem that they had experienced was a broken pipe problem which had since been corrected. In April 1990, buyers asked agent's employees if sellers experienced any leakage problems. Agent's employees informed buyers that they were unaware of any water leakage problems. On April 9, 1990, after buyers spoke to agent's employees, sellers sold their home to Prudential. In accordance with the agreement with Prudential, sellers vacated the property on April 25, 1990. Prudential entered into a purchase agreement with buyers on July 10, 1990 and closed on the property on August 3, 1990. That very same day a rain storm occurred in Washington County. The rain, which fell upon the patio, seeped into the garage causing its roof to fall upon buyers' car.

Buyers brought this suit alleging that sellers and agent intentionally or negligently misrepresented to them that there were no leakage problems and, upon buyers' reliance on the misrepresentations, sellers and agent induced them to purchase the property. The trial court granted sellers' and agent's motions for summary judgment. This appeal followed.

In determining whether a grant of summary judgment was proper, we must consider the record in the light most favorable to an appellant. *Zafft v. Eli Lilly & Co.* 676 S.W.2d 241, 244 (Mo. banc 1984) (citing *Scott v. Thornton*, 484 S.W.2d 312, 314 (Mo.1972)). Our standard of review is de novo. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). We owe no deference to the trial court since it based its judgment on the same record that we have before us, *Id.* (citing *Elliott v. Harris*, 423 S.W.2d 831, 834 (Mo. banc 1968), *declined to follow on other grounds, ITT Commercial Fin. Corp.*, 854 S.W.2d at 378; *Swink v. Swink*, 367 S.W.2d 575, 578 (Mo.1963)), and since in order for a grant of summary judgment to be properly sustained, the facts must be such as would entitle the movant to judgment as a matter of law. *ITT Commercial Fin. Corp.*, 854 S.W.2d at 376. Under the test developed by our Supreme Court in *ITT Commercial Fin. Corp.*, 854 S.W.2d 371, a movant must first meet the burden imposed by Rule 74.04(c) by establishing his/her right to judgment as a matter of law. *Id.* at 380–381. One of the ways a movant, who is a defending party, may accomplish this is to show facts negating an essential element of plaintiff's *prima facie* case. *Id.* at 381. Once the movant overcomes this hurdle, the burden shifts to the non-movant who must demonstrate by affidavit, depositions, answers to interrogatories or admissions on file that one or more of the material facts relied on by the moving party to establish its right to judgment, as a matter of law, are genuinely disputed. *Id.* A genuine dispute is one which is "real and substantial" and "not consisting merely of conjec-

ture, theory and possibilities." *Id.* at 378, 382.

In the case at hand, buyers brought an action against sellers and agent alleging intentional and negligent misrepresentation. A prima facie case of intentional misrepresentation consists of the following elements: (1) the representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or his/her ignorance of the truth;[1] (5) the speaker's intent that his/her representation should be acted on by the hearer in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) his right to rely thereon; and (9) the hearer's consequent and proximately-caused injuries. *Clark v. Olson,* 726 S.W.2d 718, 721 (Mo. banc 1987). To maintain a cause of action for negligent misrepresentation, one must show: (1) that speaker supplied information in the course of his business or because of some other pecuniary interest; (2) that, due to speaker's failure to exercise reasonable care or competence in obtaining or communicating this information, the information was false; (3) that speaker intentionally provided the information for the guidance of a limited group of persons in a particular business transaction; (4) that listener justifiably relied on the information and (5) that as a result of listener's reliance on the statement, he/she suffered a pecuniary loss. *Chubb Group of Ins. v. C.F. Murphy & Assoc.,* 656 S.W.2d 766, 783–784 (Mo.App. W.D.1983); *Ligon Specialized Hauler, Inc. v. Inland Container Corp.,* 581 S.W.2d 906, 909 (Mo.App.E.D.1979); W. PAGE KEETON, PROSSER AND KEETON ON TORTS §§ 107–110 (5th ed. 1984) (citing RESTATEMENT (SECOND) OF TORTS § 552 (1977)). A negligent misrepresentation claim is premised upon the theory that the speaker believed that the information supplied was correct, but was negligent in so believing.

If buyers cannot provide proof of all of the elements of intentional or negligent misrepresentation, a trial court may grant sellers' motion for summary judgment on that count of the petition. *Cantrell v. Superior Loan Corp.,* 603 S.W.2d 627, 634 (Mo.App.E.D. 1980). Sellers and their agent contend that buyers have failed to introduce any evidence that the statements were false at the time that they were allegedly made, that buyers were ignorant of the falsity of the alleged misrepresentations and that the buyers relied on the misrepresentations as being true. We find on review of the record that buyers provided sufficient evidence to put each element of intentional and negligent misrepresentation in their cause against sellers in genuine dispute, but failed to do so with respect to their cause of action against agent.

An analysis of the record reveals buyers submitted affidavits which read:

I specifically recall my wife and I asking Eileen Captain on at least one occasion and asking Gladys Fields and Boots Bonnie, the realtors from Washington Realty, on at least two other occasions, prior to the purchase of 182 Carriage Court, about whether the Captains *had experienced any problems* with water leaking into their garage. The first time we asked about a leaking problem was in either January or February of 1990. Mrs. Captain responded that they had a pipe burst on the north side of the garage, *but no other problems had occurred.* The realtors from Washington Realty stated that they knew of no water leakage problems. (emphasis added).

Sellers and agent contend that their responses were not false at the time the statements were uttered because the *only* problem sellers experienced occurred when a water pipe burst, a problem which had since been corrected. The record, however, suggests that sellers were aware of a leakage

---

1. This relates to a speaker's reckless disregard of the truth or falsity of the statement as opposed to a speaker's negligent failure to exercise reasonable care or competence to ensure that he/she is relaying truthful information. *See Huttegger v. Davis,* 599 S.W.2d 506, 514 (Mo. banc 1980) (Welliver, J., dissenting, joined by Rendlen, J.). To prove the defendants spoke recklessly, "[i]t is

sufficient that (the defendant) made the representations with the consciousness that he was without knowledge as to their truth or falsity, when, in fact, they were false." *Id.* at 514, n. 1. (quoting *Ackmann v. Keeney–Toelle Real Estate Co.,* 401 S.W.2d 483, 489 (Mo. banc 1966), *disagreed with on other grounds, Burnett v. Griffith,* 769 S.W.2d 780, 791 (Mo. banc 1989)).

problem. Paul Monzyk, a home improvement worker, asserted in his sworn statement that sellers hired him to *paint and caulk their deck*. He noted that the *sellers stated to him that they believed that the caulking would stop the water leakage into their garage*. Mr. Monzyk also mentioned that he does not know if the work he did corrected the problem. Furthermore, Doug Hazel, who formerly owned the home in question, asserted in a sworn affidavit that he had experienced and attempted to correct leakage problems on at least two occasions while he lived in the house. From the aforementioned evidence we deem there was a genuine dispute as to sellers' knowledge of the existence of a water leak.

▪ Sellers insinuate that the buyers must provide direct and iron-clad proof that they actually experienced or were aware of the water leakage problem. Sellers, however, are mistaken in their understanding of the requirements for intentional or negligent misrepresentation and the function of summary judgment. Although fraud is not to be presumed, *Cantrell*, 603 S.W.2d 627, 634 (Mo. App.E.D.1980) (quoting *Hunter v. Roberts*, 267 S.W.2d 368, 372 (Mo.App.St.L.D.1954)), it may be proven in its entirety by circumstantial evidence. *Bayer v. American Mutual Casualty Co.*, 359 S.W.2d 748, 752 (Mo.1962); *Universal C.I.T. Credit Corp. v. Tatro*, 416 S.W.2d 696, 703 (Mo.App.K.C.D.1967). The same may be said about the required proof for negligent misrepresentation. Moreover, conclusive evidence is certainly not necessary on the summary judgment level. As long as the non-movant is able to put each and every element of the cause of action in "genuine dispute" he/she has a right to take his/her case to the jury. *ITT Commercial Fin. Corp.*, 854 S.W.2d at 378. Reasonable minds could believe, from the aforementioned facts, that sellers had leakage problems in January when they made the statement.

Sellers assert that, as a matter of law, buyers are presumed to have relied on the findings of their own investigation of the house and not on the alleged misrepresentations.

Prior to closing on the property, buyers hired Mr. George Mahn, Jr. to conduct an inspection of the property. The inspector noted in his report:

Patio, concrete covered with quarry tile, minor grout fill should be installed where joints have small voids. This is more preventive in nature than from weathering. The entire patio could have sealer applied to protect joints from water and ice.

The overall concrete patio and quarry tile structure appeared to be sound without any visible cracking or settlement. The tile was tight without any cracking or deteriorated joints.

Seal at patio to building juncture needs to have silicone or compatible sealer applied to areas where it is slightly below quarry tile, this is to prevent possible leakage into garage area.

NOTE: suspect access trap door in garage was cut in to check for water leak, there-in pipes found to be in good order, patio seal then came into question, as it is over area mentioned, old water marks probably correspond to this seal.

Based on the inspection report, sellers claim buyers are unable to prove either that they were ignorant of the falsity of, or that they justifiably relied on, the alleged misrepresentations. We deal with these issues jointly.

▪ The right to rely on a representation is ordinarily a question of fact for the jury. *Tietjens v. General Motors Corp.*, 418 S.W.2d 75, 83 (Mo.1967) (citing *Baker v. Bickel*, 386 S.W.2d 105, 110 (Mo.1964) (further citation omitted)). Generally, "where a party makes his own independent investigation, he will be presumed to have been guided by what he learned and the conclusions he reached and will not be permitted to say that he relied on misrepresentations of another and that he was deceived thereby." *Consumers Co-op. Ass'n v. McMahan*, 393 S.W.2d 552, 556 (Mo.1965) (citing *Bayer*, 359 S.W.2d at 754). There are, however, several recognized exceptions to this rule. "[I]f the representee, instead of investigating as fully as he may, makes only a partial investigation and relies in part on such investigation and in part upon the representations of the adverse party, and is deceived by such repre-

sentations to his injury, it is held that he has a right to rely on, and may maintain an action for, such deceit." 37 AM.JUR.2d 317 *Fraud and Deceit* § 238 (1968); *Iota Management Corp. v. Boulevard Inv. Co.*, 731 S.W.2d 399, 413 (1987) (citing 37 AM.JUR.2d 317 *Fraud and Deceit* § 238 (1968)). Furthermore, the fact that a buyer conducts an independent investigation does not preclude his/her claim of reliance on a seller's misrepresentation if the parties do not stand on "equal footing" and "the facts are peculiarly within the knowledge of the party making the representation and are difficult for the representee to ascertain." *Iota Management Corp.*, 731 S.W.2d at 413; *Fox v. Ferguson*, 765 S.W.2d 689, 691 (Mo.App.E.D. 1989). Finally, even if the parties stand on equal footing, if the seller makes a distinct and specific representation, the buyer has the right to rely thereon, *Iota Management Corp.*, 731 S.W.2d at 413, and the doctrine of notice is irrelevant to the determination of the case. *Fox*, 765 S.W.2d at 691 (citing *Tietjens*, 418 S.W.2d at 82 (further citations omitted)). All of these situations exist in the case *sub judice.*

■ Whether two parties are on equal footing with one another is ordinarily a question for the factfinder. *Id.* at 691. Granted, there will be cases in which a buyer's use of an inspector who specializes in highly technical fields, will elevate the buyer to a position in which his/her knowledge exceeds seller's knowledge. However, in the vast majority of cases, a seller, who has lived in a property, as opposed to a mere investor, would have knowledge which is superior to a buyer's knowledge concerning the property's condition. In this case, for example, sellers may have lived in the house through some rainstorms. Buyers, in contrast, sent an inspector into the house for a few hours, an inspector who may or may not have been in the house while it rained. Obviously, the sellers would have a better vantage position of the leakage problem and the severity of the condition. *See, Fox*, 765 S.W.2d at 691.

■ Our analysis with respect to agent is somewhat different. Buyers concede through their affidavits that agent's employees merely stated that they "knew" of no water leakage problems. They never made a specific claim that there were no problems and the record does not provide us with any facts which would create a genuine dispute as to whether agent, who merely listed the home for sale, was aware of the water leakage. Furthermore, agent appears to be on equal footing with buyers. Accordingly, we affirm the trial court's grant of summary judgment to agent.

### Eligibility for award of damages for frivolous appeal

■ Sellers and agent also contend that buyers' appeal was frivolous. The purpose of frivolous appeal sanctions is to send a message to perspective appellants that the filing of meritless cases will not be tolerated and to compensate respondents for the time and money that they must spend to respond to futile appeals. Rule 84.19; *In re Estate of Voegele*, 838 S.W.2d 444, 446–447 (Mo.App. E.D.1992) (citing *Blackstock v. Farm and Home Sav. Ass'n*, 792 S.W.2d 9, 11 (Mo.App. W.D.1990)). Our reversal of the trial court's grant of summary judgment to sellers obviously reveals that this appeal was not frivolous with respect to sellers.

■ We also deny agent's claim for frivolous damages against buyers. Awarding damages for a frivolous appeal is a drastic measure which the court reserves for those cases in which an appeal on its face is totally devoid of merit. *In re Estate of Voegele*, 838 S.W.2d at 446 (citing *Fornachon v. Fornachon*, 748 S.W.2d 705, 709 (Mo.App.E.D. 1988); *O'Dell Plumbing, Heating & Cooling, Inc. v. Clayton Greens Nursing Center, Inc.*, 676 S.W.2d 528, 532 (Mo.App.W.D.1984)). We do not believe that buyers' appeal against agent rises to the requisite level to justify an award of damages for a frivolous appeal. Point denied.

Grant of summary judgment to Washington Realty Company affirmed; grant of summary judgment to William and Eileen Captain reversed and case remanded for further proceedings consistent with this opinion.

SIMON, P.J., and KAROHL, J., concur.